JONES et al. v. MILLER
(two cases).

Court of Appeals of Kentucky.

Nov. 21, 1951.

Wheeler & Marshall, Paducah, Nat Ryan Hughes, Murray, for appellants.

Wells Overbey, Murray, for appellees.

SIMS, Justice.

In each of these consolidated actions, Russell Jones, doing business as the Jones Packing Company, and T. P. Jones, usually called Pete, were defendants. Russell and Pete Jones are not related, nor did they have any business connection. For the sake of brevity and to avoid confusion, we will refer to each of the defendants by their given names and to the Millers, who are husband and wife, as plaintiffs.

These cases arose out of an automobile accident which occurred about 5:00 p. m., on Dec. 13, 1948, on highway 95 just south of the city limits of Dexter. The Millers

in separate actions averred the joint negligence of defendants caused the accident and plaintiffs' resultant injuries. Pete's answer denied any negligence on his part and on cross-petition he sought to recover $1100 in damages against Russell. The answer of Russell denied negligence and by cross-petition sought to recover damages against Pete in the sum of $1378.05. There were no objections to these cross-actions. See Brown Hotel Co. v. Pittsburg Fuel Co., 311 Ky. 396, 224 S.W.2d 165.

A verdict was returned against Russell for $2000 in favor of J. II. Miller and for $1000 in favor of Mrs. Miller. There was no verdict against Pete and he recovered nothing on his cross-petition and he is not a party to this appeal. In seeking to reverse the judgment, Russell insists: 1. The verdict conflicts with the evidence; 2. it is contrary to law; 3. a prejudicial statement was made by the court during the trial.

The evidence shows that Russell's large meat refrigerator truck was being driven in a northerly direction on highway 95 in Calloway County by George Fields, his employee and agent. Miller, accompanied by his wife, likewise was proceeding north in his Plymouth automobile. Pete was traveling in a southerly direction in his Ford car, hence was meeting the truck and the Miller car.

The evidence for the plaintiffs is to the effect that the truck passed their car on the left and before it got back on its side of the road the left front of the approaching Ford struck the left rear dual wheels of the truck and then the Ford ran into the Miller car, damaging it and injuring Miller and his wife; that the Miller car was on its right side of the road proceeding at a speed of 30 miles an hour and the left rear wheels of the truck were a foot or two to the left of the center line of the highway when it and the Ford collided; that the truck was traveling between 45 and 50 miles an hour, and the approaching Ford was making 30 or 35 miles an hour.

Russell's proof was to the effect that the truck had passed the Miller car two miles south of the place of the accident; that the truck was equipped with a governor set at 40 miles an hour and it was traveling at

that speed when its driver noticed the Ford approaching at a distance of 200 yards. The truck slackened its speed to 15 or 20 miles an hour, pulling over to the extreme right side of the road and the Ford came across the middle line, hit the truck and then ran into the Miller car at a point about 50 feet from where it had struck the truck. The truck went out of control when struck by the Ford, traveled some 500 or 600 feet down the highway and turned over. The truck driver testified the Ford was approaching at a speed of 60 or 70 miles an hour. Pete testified he was driving the Ford between 30 or 35 miles an hour and the truck "was over across the line".

 It is thus seen under this conflicting evidence there was a question for the jury to determine whose negligence caused the damages sustained by the plaintiffs. However, Russell insists that as the petition of each plaintiff averred the truck "was being driven north on said highway and 50 or 60 yards in front of the car then and there driven by J. H. Miller", this was a specific averment that Miller's car was trailing the truck 150 or 180 feet at the time of the accident and plaintiffs may not contradict such averments by testifying the truck in passing their car caused the accident. We agree with plaintiffs that these averments were not ones of specific negligence but they merely stated the place of the accident, and that the petitions averred general negligence when they charged the accident was the result "of the joint negligence * * * of George Fields, an agent and servant of Russell Jones, and (of) T. P. Jones".

 The fact that Miller in a written statement previous to the trial, and Pete in his deposition taken as if upon cross-examination, made statements which Russell insists are in direct conflict with testimony they gave upon the trial, do not make the verdict conflict with the evidence. We have many times written that the jury determines the weight as between the conflicting testimony of a witness and may believe his testimony on the trial regardless of previous contradictory statements. Irvin v. Madden, 281 Ky. 7, 134 S.W.2d 942; American Mutual Liability Ins. Co. v. Hartman,

254 Ky. 712, 72 S.W.2d 429; Cheatham v. Chabal, 301 Ky. 616, 192 S.W.2d 812.

■ Nor does the fact that the truck did not strike the Miller car relieve Russell from the charge of general negligence where there is substantial proof that the negligence of his driver caused Pete's car to collide with the car of plaintiffs. Hale v. Dunn, 310 Ky. 6, 219 S.W.2d 403.

■ Russell next insists that the verdict is contrary to law because the fourth instruction told the jury it might find against both defendants if both were negligent, or against only one of them if that one solely was negligent and instruction #5 told the jury not to award damages to either defendant if both were negligent. In view of what the court told the jury, Russell argues it was contrary to these instructions for the jury to award to plaintiffs damages only against him and then not to award damages to Pete on his cross-petition against him. The answer to that argument is that Pete is the only one who may complain of the jury not awarding him damages on his cross-petition and Pete is not appealing. Manifestly, Russell has no ground for complaint that the jury failed to award Pete damages against him.

■ During the course of the argument counsel for Russell contended that the jury should find for the plaintiffs against Pete, while the latter's counsel insisted the verdict should be for plaintiffs but against Russell. In closing the argument, plaintiffs' counsel stated to the jury that each of the defendants admitted plaintiffs should recover. Thereupon, counsel for Russell objected and the court said, "The Millers were entitled to recover against one or both of the defendants". At the conclusion of the argument, the court said: "I know that learned counsel in their zeal for their clients sometimes go a little further perhaps in their interpretation of the Court's words than the Court meant. Just to make this point clear, as to the position of J. H. Miller and Louise Miller, the plaintiffs in this case, if you read these instructions you find that you must believe that there must have been some negligence on the part of the defendants, both or either one of them, to cause this accident. When the Court says that J. H. Miller and Louise Miller are not as a matter of law guilty of any contributory negligence so far as this record shows in bringing about this accident, it is further incumbent upon the Jury to find that there is some evidence of negligence upon the part of the defendants before you can give them a verdict. The thing might have happened by an accident or an act of God, and then neither one of the defendants would be responsible. But when I say that this record and this evidence does not show that Mr. Miller and Louise Miller, his wife, were guilty of any negligence, I think that you can read these instructions and infer that that is true. You may go to your room and make up your verdict in this case."

Russell contends that these remarks by the court amounted to an oral instruction which is prohibited by § 317(5) of the Civil Code of Practice, requiring all instructions to be in writing when requested, citing City of Hazard v. Eversole, 237 Ky. 242, 35 S.W. 2d 313, that in effect the court's remarks directed a verdict for plaintiffs. He further contends that this was a comment on the evidence by the court, which is prohibited in this jurisdiction, citing City of Prestonsburg v. Mellon, 220 Ky. 808, 295 S.W. 1064; Louisville & N. R. Co. v. Utz, 297 Ky. 70, 178 S.W. 958. We cannot agree with Russell that this comment by the court was an oral instruction or that it was a comment on the evidence. Certainly, it did not prejudice Russell, as under the evidence the court would have been justified in directing a verdict in favor of plaintiffs, leaving to the jury to determine which defendant was negligent and the amount of damages. It is manifest the statement was merely an explanation by the trial judge of why he overruled Russell's objection to plaintiffs' argument, and it does not run afoul of what was written in any of the authorities relied upon by Russell.

The judgment is affirmed.